### N. M. SHORT v. J. E. & J. R. SHORT.

#### No. 978.

1. **Community Property—Deed to Husband.**
    Where land is bought during the life-time of the wife, paid for out of community property, and deed made to the husband during the existence of the marital relation, it is community property.

**2. Same—Deed to Husband after Wife's Death—Presumption.**

Where land is conveyed to the husband by deed after the death of the wife, the presumption arising therefrom that it is his separate property may be rebutted by proof showing that it was bought during the life of the wife and paid for out of community property.

**3. Tenant in Common—Acquiescence—Estoppel.**

Acquiescence by a tenant in common to a sale by a co-tenant conveying more than such co-tenant's rightful share in the common estate, in order to be made available as an estoppel in pais, should be pleaded as such.

APPEAL from Kaufman. Tried below before Hon. J. E. DILLARD.

*Lee R. Stroud,* for appellant.

*J. S. Woods,* for appellees.

LIGHTFOOT, CHIEF JUSTICE.—The following statement in appellant's brief is concurred in by appellees, and is adopted: Appellees, J. E. Short and J. R. Short, brought this suit for title and partition of 162 acres of land, on October 17, 1892, against the appellant. The land is a part of the Woods and Connor surveys. Appellant answered not guilty, and further answered that plaintiff's petition misdescribed the land as 162 acres, when in fact the lands owned in common by the parties was 304 acres, that is, 640 acres less 128 acres long since set off to the McKinney heirs, and less 30 acres set off to Mrs. Tennessee Thomas, and less 178½ acres advanced to plaintiff J. E. Short, and sold by him to the Rhea brothers, as so much received on his share, on or about February 24, 1891. Defendant's answer contains a plat of the 640 acres, showing the 128, the 30 and the 178½ acres, which tracts are eliminated, leaving only 304 acres to be partitioned. Defendant alleged that the 178½ acres was conveyed to the Rheas with the understanding, both actual and implied by law, that it should be computed as so much received by J. E. Short on his share in the land. This answer contains a plat and field notes of all the tracts here mentioned.

Plaintiffs, by supplemental petition, replied to this answer, and plead not guilty. There was no jury; the court found that defendant N. M. Short should take nothing out of the 142 acres set out in his amended answer, and further found that plaintiff J. E. Short should recover 26 acres, and plaintiff J. R. Short 14 acres, making 40 acres, out of the 162-acre tract originally sued for, as described in plaintiffs' original petition. Judgment was rendered against defendant for the 26 and 14 acres, to come out of the 162 acres. Defendant appeals.

1. The second assignment of error is as follows: "The court erred in finding that J. R. Short, the father of his co-plaintiff and of defendant, paid for a one-fifth interest in the 640 acres (called the Elizabeth Hobson interest) out of his (J. R. Short's) own separate funds (as shown in clause fourth of conclusions of fact), because the deed from said Elizabeth Hobson bears date prior to the death of J. R. Short's wife, Amie Short, and because plaintiffs, J. R. Short and J. E. Short, and others, admitted and

testified, against their own interests, that it was not his own funds which paid for the same, but that it was a community horse, named Tom Baker, which paid for this Hobson interest, and this fact is not in any manner controverted."

This assignment is well taken. It appears from the statement of facts, that Elizabeth Hobson, one of the five heirs of patentee, conveyed her one-fifth interest (128 out of the 640 acres) by a deed to J. R. Short, appellee, on May 10, 1867, and his wife, Amie Short, did not die until July 7, 1867. A community horse, named Tom Baker, bought early in 1866, paid for the land. The court found that the separate funds of the husband, J. R. Short, paid for this 128 acres.

There is no testimony in the record to sustain this conclusion. The facts clearly show that this tract was bought by J. R. Short during the lifetime of the wife, was paid for out of community property, and the deed executed during the existence of the marital relation, and hence the land was community property.

2. The next assignment of error presented by appellant is as follows: "The court erred in finding (as shown in fifth conclusion of fact) that J. R. Short, when he sold to J. E. Short, was entitled to 320 acres out of said 640 acres; because said J. R. Short only acquired 64 acres from Drury Overby, considering it not his separate property, and could have only acquired one-half of the E. Hobson interest, that is, 64 acres, and one-half of Mrs. Thomas Short's interest, that is, 64 acres, by the law of descent and distribution, which, at most, aggregates only 192 acres, and not 320 acres in J. R. Short, as found by the court."

The original patentee of the land died, leaving five heirs, one of them being Amie Short, wife of J. R. Short. The latter purchased the interests of three of the heirs, to-wit, the interests of Elizabeth Hobson, Thomas Short and Drury Overby. The facts as contained in the record show that each of these purchases was made during the lifetime of the wife, Amie Short, and the lands paid for during her lifetime. There is no testimony indicating that either tract was paid for out of the separate funds of J. R. Short. The facts, that the deed from the heirs of Thomas Short was executed December 7, 1869, and that the deed from Drury Overby was executed December 28, 1869—both being after the death of the wife, Amie Short—are circumstances, which, unexplained, might lead to the presumption that these purchases were made after the death of the wife. But, presumptions are indulged in the absence of facts, and not against the facts. It was clearly shown by testimony which was not disputed that both purchases were made and the land paid for during the lifetime of the wife, and there was no testimony indicating that such payments were made out of separate funds of J. R. Short. On the contrary, J. R. Short himself testified that the purchase was made and the deed executed by Drury Overby during the lifetime of his wife, and it was shown that the first deed, not being recorded, was lost. The land was paid for in cash. It also appears that the purchase from the Thomas

Short heirs was made during the lifetime of the wife, the payment being made in a buggy and harness, the deed executed, and that this deed was lost, and the deed of 1869 executed in its stead.   The court below, in its fifth conclusion of fact, finds "that plaintiff J. R. Short was entitled to 320 acres of land on said two surveys, and the heirs to 192 acres."   The aggregate amount of land stated in this finding, 512 acres, represents the three interests of 128 acres each bought by J. R. Short, and the interest already owned by the wife, Amie Short, by inheritance, which was 128 acres.   The judgment rendered clearly shows that the court held that J. R. Short was entitled to 320 acres as his separate property, which is not sustained by the facts.

3.   The appellant also insists that "the court erred in finding that plaintiff J. R. Short sold to J. E. Short as much as 320 acres (as shown in sixth clause of findings of fact), and that N. M. Short lost his interest inherited from his mother in said 320 acres by acquiescence, because there was never any partition of the land, either in fact or by legal construction; and there was nothing more than a mistaken opinion as to the respective undivided interests of the parties, tenants in common, without any division and without any agreement, either verbal or in writing, settling their undivided interests."

The court, in its sixth conclusion, finds that J. R. Short sold to J. E. Short, 320 acres in the survey, which was surveyed off to him and acquiesced in by N. M. Short.   There is no question made by appellant that J R. Short sold to J. E. Short 320 acres, but he controverts the proposition that he acquiesced in such sale or estopped himself from claiming all that was justly due him.   There is no pleading on the part of the plaintiffs below setting up an estoppel, and the facts in the record are not sufficient to establish it, if properly alleged.   The 640-acre tract is in a square.   Out of the south corner was set apart by agreement 128 acres, or the one-fifth interest of Joseph McKinney, about which there is no controversy.   Out of the west corner was set apart 30 acres for Tennessee Thomas, about which there is no controversy.   Out of the east corner was surveyed 178½ acres, sold by J. E. Short to R. P. and J. T. Rhea, February 24, 1891, which was acquiesced in by appellant, with the understanding that there was plenty left out of which he could obtain his portion, but the testimony does not show that he agreed to the survey of the line fixing a boundary for the 320 acres.   It is true, he was present and assisted in running a line from the southeast corner of the Thomas 30 acres to the northwest corner of the Rhea 178½ acres, and there is no controversy among the parties as to whether this was intended as an agreed division line between them, or whether it was run as a preliminary survey to aid the parties in making a division afterward.   The issues upon this question have not been clearly made below, either in the pleadings or the evidence.   It is manifest from the record that J. R. Short conveyed to J. E. Short more land than he owned in the survey in his own separate right.   No questions are presented to us

or found in the conclusions of the court below showing a right to convey as survivor of the community.     If the parties under a mutual mistake of their rights have each considered the deed from J. R. Short to J. E. Short as rightfully conveying 320 acres of land, when, in fact, it was more land than J. R. Short had a right to convey, that question has not been fairly presented to us.     Under the record as now presented, we must find the above assignment, or that portion of it having reference to the acquiescence of appellant in the conveyance, to be well taken.

4.     Under the sixth assignment, appellant claims an equitable interest in the land of J. E. Short by reason of having paid a part of the purchase money to L. S. Thorne when it was repurchased from the latter by J. E. Short and N. M. Short, after its sale under deed of trust.     The facts under this assignment are controverted, and as the judgment must be reversed and the case remanded for a new trial, we refrain from passing upon them.

It is clear to us that the case has not been fully developed, and that the conclusions of the learned court below are not in harmony with the statement of facts.

For the errors indicated, the judgment is reversed and the cause remanded.                                           *Reversed and remanded.*

Delivered December 21, 1895.